# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLORADO

Civil Action No.

DEADWOOD BIOFUELS, LLC, a South Dakota limited liability company,

Plaintiff,

v.

TRAEGER PELLET GRILLS LLC, a Florida limited liability company,

Defendant.

---

## COMPLAINT

---

Plaintiff, Deadwood Biofuels, LLC ("Deadwood Biofuels"), by and through its undersigned counsel, submits this Complaint for violation of the antitrust laws against Traeger Pellet Grills LLC ("Traeger" or "Defendant").

## I. PARTIES

1.      Deadwood Biofuels is a South Dakota limited liability company that transacts business in Colorado.  Deadwood Biofuels manufactures wood grill pellets for use, among other things, in pellet barbeque grills and pellet stoves.  Deadwood Biofuels' market is concentrated in the Northern Great Plains and the Upper Midwest, including Colorado.

2.      Defendant Traeger is a Florida limited liability company that transacts business in Colorado and whose principal address is 9445 SW Ridder Road, Wilsonville, OR 97070.  Defendant Traeger manufactures wood grill pellets used in pellet barbeque grills.  Traeger sells wood grill pellets throughout the United States.

## II.  JURISDICTION AND VENUE

3.      Deadwood Biofuels brings this action pursuant to Sections 3, 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 16 and 26) for private enforcement of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2).  The sales of wood grill pellets are provided across state lines.

4.      Traeger's antitrust violations described in this Complaint have had, and are having, a substantial effect on interstate commerce.

5.      This Court has jurisdiction over the federal law claims under 28 U.S.C. §§ 1331, 1337 and 1338, and 15 U.S.C. § 1121.  The Court has jurisdiction over the state law claims under the supplemental jurisdiction provisions of 28 U.S.C. § 1367.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## III.  BACKGROUND

7.      Traeger manufactures barbeque wood pellet grills and wood grill pellets for use in its grills.

8.      The barbeque wood pellet grill market is a distinct product market.

9.      The market for wood grill pellets used in barbeque wood pellet grills is a distinct product market.

10.      The geographic market for both barbeque wood pellet grills and wood grill pellets used in barbeque wood pellet grills is the United States.

11.      Deadwood Biofuels and Traeger compete directly in the wood grill pellet market (the "Market").

12.      Deadwood Biofuels manufactures wood grill pellets that customers prefer to the wood grill pellets manufactured by Traeger because of some or all of the following: (i) better

price; (ii) better flavor; (iii) better burn qualities; and (iv) other superior features or a combination of these factors.

13.     Traeger currently controls the markets in barbeque grills and barbeque wood grill pellets.

14.     On information and belief, Traeger controls more than 70% of both markets.

## IV. <u>TRAEGER'S ANTI-COMPETITIVE ACTS</u>

15.     Traeger enters into agreements with distributors of its pellet barbeque grills that prevent distributors from purchasing or selling barbeque wood grill pellets manufactured by companies other than Traeger.

16.     Traeger enters into agreements with purchasers of its pellet barbeque grills that prevent customers from purchasing barbeque wood grill pellets manufactured by companies other than Traeger.

17.     Traeger unlawfully voids the warranty of its barbeque grills if customers use barbeque wood grill pellets manufactured by companies other than Traeger.

18.     For years, and currently, Traeger has been in violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*).  Section 102(c) of that Act expressly prohibits inclusion of a tie-in sales provision in any warranty as follows:

> No warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service . . . which is identified by brand, trade, or corporate name… .

15 U.S.C. § 2302(c).

19.     Traeger has the following message to consumers posted on its website:

> Warning:  Using any brand of pellets other than Traeger pellets will void the warranty of your grill.

20.     On May 17, 2011, at 2:43 p.m., Traeger sent a threatening email to its retailers with the following warning:

> Dealer agrees that it will not distribute, sell, promote or market competing pellet grills and shall not recommend the sale or use of any non-Traeger barbeque pellet[.]

***

> Dealers who elect to sell other pellet grills or pellets will not be an authorized dealer.

21.     Traeger's dealership agreements constitute tying arrangements in which dealers are prohibited from selling competing pellet grills.  Traeger includes the following language in agreements it has with some dealers:

> Dealer agrees that it will not distribute, sell, promote or market competing pellet grills and shall not recommend the sale or use of any non-Traeger barbeque pellet[.]

22.     Traeger has and continues to send its representatives on trips to dealerships and other stores selling Traeger's grills where the stores and outlets are warned, in person and otherwise, by a Traeger representative, that they better not stock or sell competing pellets if they want to sell Traeger's grills.

23.     Traeger's anticompetitive campaign has worked.  Traeger's dealers have been prevented from purchasing wood grill pellets manufactured by anyone other than Traeger.

24.     A number of dealers had negotiated to sell Deadwood Biofuels' pellets until they were threatened by Traeger.  Specifically, Deadwood Biofuels had commitments from stores to purchase Deadwood Biofuels' product but before Deadwood Biofuels shipped, Deadwood Biofuels was advised by customers that they were unwilling to face the retaliation threatened by Traeger if they purchased and sold Deadwood Biofuels' wood grill pellets.

25.     Traeger specifically targeted and threatened Deadwood Biofuels' customers, visiting such customers dealers and delivering threats through its agents, writing threatening

letters and emails, and otherwise preventing customers from doing business with Deadwood Biofuels.

26.     Traeger's conduct is motivated by a desire to unlawfully control the market in barbeque wood grill pellets and to squelch innovation.

27.     Many customers prefer Deadwood Biofuels' pellets to those manufactured by Traeger.

28.     Deadwood Biofuels' wood grill pellets provide consumers with additional choices in flavor and cooking quality.

29.     Deadwood Biofuels has been damaged as a result of Traeger's anticompetitive scheme and competition has suffered because consumers are being denied the benefits of lawful competition.

30.     Deadwood Biofuels made a multi-million dollar investment in its business to manufacture barbeque wood grill pellets for sale to barbeque grill owners and barbeque grill and pellet distributors.

31.     Traeger's unlawful tying arrangement and other anticompetitive behavior destroyed Deadwood Biofuels' ability to sell barbeque wood grill pellets and cost Deadwood Biofuels substantial sums of money.  Deadwood Biofuels has also lost future sales opportunities as the result of Traeger's unlawful activities.

32.     Pellet grill customers are coerced by Traeger into purchasing Traeger wood grill pellets or voiding the warranty on their pellet grills.

33.     Traeger knows that use of Deadwood Biofuels' wood grill pellets poses no threat to the proper working of Traeger's grills.

34.     Traeger grill dealers are coerced by Traeger into purchasing and marketing Traeger wood grill pellets to the exclusion of all competing wood grill pellets.  Traeger tells its grill dealers that they will face termination of their dealership and/or other penalties by Traeger if they sell wood grill pellets manufactured by Traeger's competitors.

35.     Traeger has also implemented litigation against Deadwood Biofuels that lacks any merit but that that is designed to prevent Deadwood Biofuels from competing against Traeger.

36.     Traeger has also conspired with Deadwood Biofuels' former employees and persuaded those employees to breach their duties of confidentiality to Deadwood Biofuels by disclosing to Traeger Deadwood Biofuels' trade secrets and proprietary information and documents.

37.     Traeger has used, and continues to use, the existence of litigation to wrongfully persuade dealers and customers from purchasing grill pellets from Deadwood Biofuels.

38.     Traeger had no good faith basis for its litigation and/or the litigation was objectively baseless.  For example, Traeger has sued Deadwood Biofuels in a jurisdiction where Deadwood Biofuels has no presence.

## V. <u>TRAEGER'S ANTI-COMPETITIVE IMPACT ON THE MARKET</u>

39.     Deadwood Biofuels made a major investment in its business of manufacturing and selling wood grill pellets.  Deadwood Biofuels has received numerous commitments from customers to purchase its wood grill pellets.

40.     After several Traeger customers were prepared to purchase wood grill pellets from Deadwood Biofuels, Traeger developed and implemented a plan to prevent Deadwood Biofuels from competing in the Market.

41.     Traeger, as part of its ongoing plan, has engaged in and is engaging in the following anticompetitive acts and conduct with the intent to limit competition and drive Deadwood Biofuels and others out of the Market:

(a)     Posting notice on its website that use of other pellets will void the warranty on any Traeger-brand pellet grill, in express violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.;*

(b)     Suing Deadwood Biofuels when Defendant Biofuels sought to compete with Traeger;

(c)     Threatening dealers who want to sell grill pellets other than Traeger-branded grill pellets;

(d)     Threatening customers who want to purchase grill pellets other than Traeger-branded grill pellets; and

(e)     Making false and reckless misstatements about Deadwood Biofuels and other competitors; and

(f)     Engaging in unlawful tying of pellet barbeque grills and barbeque pellets.

42.     Traeger's conduct is intended to, and has the intended effect of, reducing competition with Traeger.  Further, Traeger is leveraging its power over barbeque wood pellet grills to prevent Deadwood Biofuels and others from competing in the Market.  Traeger's acts, described above, are intended to restrain Deadwood Biofuels and others from competing with Traeger in the Market, deter new entry into the Market, and increase Traeger's market power.

43.     Traeger has tied and continues to tie the purchase of Traeger barbeque grills to the purchase of Traeger-branded pellets and has expressly conditioned the use of Traeger-branded pellet grills to force the purchase of Traeger-branded wood grill pellets.

44.     Owners and users of barbeque wood pellet grills benefit from the existence of other brands of wood grill pellets such as the wood grill pellets manufactured by Deadwood Biofuels.

45.     On average, Traeger charges higher prices than Deadwood Biofuels and other competitors in the Market.  Consumers benefit from price competition.

46.     Traeger's acts have harmed, are harming, and threaten to continue to harm competition in the Market.  Deadwood Biofuels and others have been harmed and damaged by Traeger's anticompetitive acts and are being precluded from competing effectively or competing altogether in the Market.

47.     Potential competitors are being prevented or deterred from entering the Market. This consolidates Traeger's power in the Market.

48.     As a result of Traeger's actions, consumers have been harmed because of a lack of choice of wood grill pellet products and will be harmed further as competing manufacturers are forced to withdraw from the Market.  Traeger's actions are designed to prevent competitors from competing.  By discouraging the entry of new competitors into the Market and restraining existing competitors in the Market, Traeger has profited from the lack of price and quality competition that has caused and will continue to cause prices in the Market to increase and quality and choice to decrease.

49.     Traeger has no efficiency or other legitimate business justification for the above-alleged acts.

### FIRST CLAIM FOR RELIEF
### <u>UNLAWFUL TYING ARRANGEMENT (PER SE) - SHERMAN ACT § 1</u>

50.     Deadwood Biofuels realleges and incorporates herein by reference all of the foregoing allegations.

51.     Traeger has in the past and presently is conditioning the sale and use of Traeger-branded barbeque wood pellet grills (the Tying Product) on commercially reasonable terms upon dealers' and customers' purchase of Traeger-branded wood grill pellets (the Tied Product) from Traeger.  Traeger has made extensive use of an unlawful tying arrangement, and has thereby violated section 1 of the Sherman Act (15 U.S.C. § 1).

52.     Traeger has market power over the sale of barbeque wood pellet grills.

53.     Barbeque wood pellet grills and wood grill pellets are two separate and distinct products.  The Tied Product is available from Traeger, Deadwood Biofuels and others.

54.     Traeger has by agreement or condition, both express and implied, tied the sale of its barbeque wood pellet grills to the purchase of its wood grill pellets.  Traeger has forced or otherwise coerced purchases of its Tying Product to buy the Tied Product from Traeger.  If Traeger had not imposed the tying arrangement, many of these purchasers would buy the Tied Product from Deadwood Biofuels or another wood grill pellet manufacturer.

55.     By imposing the tying arrangement, Traeger has (1) restrained competition in the Market for the Tied Product; and (ii) harmed and/or foreclosed a substantial amount of commerce in the Market for the Tied Product.

56.     Purchasers of Traeger barbeque wood pellet grills have been wrongfully forced and coerced to buy Traeger-branded wood grill pellets.

57.     Traeger's competitors have been wrongfully excluded from selling wood grill pellets to these purchasers.

58.     Prices for the Tied Product are higher than they would be in a competitive market.

59.     Choices and quality for the Tied Product are lower than they would be in a competitive market.

60.     Supply of the Tied Product has been lower than it would be in a competitive market.

61.     Traeger's conduct constitutes a *per se* violation of Section 1 of the Sherman Act.

62.     There is no appropriate or legitimate business justification for the tie of barbeque wood pellet grills to Traeger's wood grill pellets.  This arrangement imposes excessive burdens and any legitimate business purpose can be accomplished by less restrictive means.

63.     Deadwood Biofuels has lost, and continues to lose, profits and potential profits as a result of Traeger's tying arrangement.

## SECOND CLAIM FOR RELIEF
## UNLAWFUL TYING ARRANGEMENT (RULE OF REASON) - SHERMAN ACT § 1

64.     Deadwood Biofuels realleges and incorporates herein by reference all of the foregoing allegations.

65.     In the alternative, if Traeger's tying arrangement of Traeger barbeque wood pellet grills to Traeger wood grill pellets is not a *per se* violation of the Sherman Act; Traeger's tying arrangement had an actual adverse effect on competition.

## DAMAGES RELATED TO TRAEGER'S
## ANTI-COMPETITIVE ACTIONS' IMPACT ON THE MARKET

66.     Deadwood Biofuels realleges and incorporates herein by reference all of the foregoing allegations.

67.     Traeger's acts and conduct have injured competition in the relevant markets. Traeger's acts and conduct have and threaten to (1) prevent Deadwood Biofuels from competing in the Market; (2) prevent dealers and end-user customers from contracting or continuing in contractual relationships with Deadwood Biofuels and other similarly situated wood grill pellet manufacturers; (3) drive Deadwood Biofuels and other similarly situated wood grill pellet manufacturers out of the Market; (4) reduce competition in the Market; (5) reduce customer choice in the Market; and (6) increase price in the Market.

68.     Deadwood Biofuels has sustained the type of injury that the antitrust laws were intended to prevent and that flows from the anticompetitive and exclusionary characteristics which make Traeger's conduct unlawful.  Deadwood Biofuels has been injured by Traeger's acts.  Traeger has implemented an anticompetitive scheme with the intent of restraining competition and driving Deadwood Biofuels out of the Market.

69.     As a direct and proximate result of Traeger's antitrust violations, Deadwood Biofuels has been damaged.  Deadwood Biofuels has lost business, customer goodwill, and has been prevented from entering into contracts and expanding its business.  Furthermore, Deadwood Biofuels is in imminent danger of continuing to lose its business, reputation and goodwill until it is completely forced out of the Market.  Deadwood Biofuels has sustained substantial losses and damages to its business and property in an amount which is presently undetermined.

**THIRD CLAIM FOR RELIEF**
**<u>VIOLATION OF THE COLORADO ANTITRUST ACT</u>**

70.     Deadwood Biofuels incorporates the preceding allegations as if fully set forth herein.

71.     Traeger's conduct as set forth above, including its warranty agreements and dealer agreements, constitute illegal restraints of trade and commerce designed by Traeger to prevent competition in the market for barbeque wood grill pellets.

72.     Traeger's conduct violates C.R.S. § 6-1-101 et seq. including but not limited to C.R.S. § 6-3-104.

73.     Traeger has acted with a specific intent to destroy effective competition in, the relevant geographic market for barbeque wood grill pellets.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT

74.     Deadwood Biofuels incorporates the preceding allegations as if fully set forth herein.

75.     Traeger's conduct as set forth above, including its statements that the use of competing wood grill pellets can damage Traeger-branded wood pellet barbeque grills, constitutes a deceptive trade practice.

76.     Traeger's conduct violates C.R.S. § 6-1-101 et seq. including but not limited to C.R.S. § 6-1-105.

77.     Traeger has acted with a specific intent to mislead consumers.

78.     Traeger is liable for these wrongful acts pursuant to C.R.S. § 6-1-113.

## FIFTH CLAIM FOR RELIEF
## UNFAIR COMPETITION

79.     Deadwood Biofuels incorporates the preceding allegations as if fully set forth herein.

80.     Traeger's deceptive, unfair and/or unlawful acts, described above, constitute unfair competition.

81.     Traeger knowingly engaged in deceptive, unfair and/or unlawful acts intending that such acts would harm competition in the Market and would injure Deadwood Biofuels and other wood grill pellet manufacturers.

82.     As a result of Traeger's unfair and anticompetitive conduct described above, competition in the Market has been injured.

83.     Deadwood Biofuels has also suffered a loss of business as a direct result of Traeger's unfair and anticompetitive conduct and Traeger has profited.

84.     Traeger has no legitimate business justification for its unfair business practices.

**SIXTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**

85.     Deadwood Biofuels incorporates the preceding allegations as if fully set forth herein.

86.     Traeger's conduct, as described above, constitutes tortious interference with prospective business and economic advantage.

87.     Deadwood Biofuels has and had economic relationships with customers and potential customers that contain a probability of future economic benefit to Deadwood Biofuels.

88.     Traeger is and has been aware of these economic relationships.

89.     As described above, Traeger engaged in intentional and improper acts designed to disrupt these economic relationships.

90.     Traeger's intentional and improper acts disrupted and interfered with Deadwood Biofuels' economic relationships and will disrupt and interfere with Deadwood Biofuels' relationships in the future.

91.     Traeger's conduct is willful, reckless and malicious, making punitive damages proper to deter conduct in the future.

92.     As a result, Deadwood Biofuels has been damaged and has suffered a loss of business and loss of goodwill.

**SEVENTH CLAIM FOR RELIEF**
**INJUNCTIVE RELIEF**

93.     Deadwood Biofuels incorporates the preceding allegations as if fully set forth herein.

94.     Traeger's acts and misconduct threaten to (1) prevent Deadwood Biofuels from competing in the Market; (2) prevent purchasers and users of barbeque wood pellet grills from contracting or continuing in contractual relationships with Deadwood Biofuels and with other competitors in the Market; (3) drive Deadwood Biofuels and other competitors out of the Market; (4) reduce competition in the Market; and (5) increase prices in the Market.

95.     Money damages alone will not suffice to remedy the damage that has and will be done to Deadwood Biofuels as a result of Traeger's acts and conduct.  Moreover, Deadwood Biofuels will lose substantial customer goodwill of incalculable value and will suffer a loss of its good reputation.  Thus, Deadwood Biofuels has no adequate remedy at law for Traeger's acts and conduct because Deadwood Biofuels will be forced out of the Market unless an injunction is granted.

**DEMAND FOR JURY TRIAL**

14

Pursuant to Fed. R. Civ. P. 38, a jury trial is demanded on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Deadwood Biofuels prays for relief as follows:

1.      That the Court enter such injunctive relief as is necessary and appropriate to restore lawful and competitive conditions in the markets affected by Traeger's unlawful conduct;

2.      For judgment against Traeger and in favor of Deadwood Biofuels awarding Deadwood Biofuels treble damages, punitive damages, costs, and attorneys' fees pursuant to all applicable federal and state laws; and

3.      For whatever other and further relief that the Court may find just and proper.

Respectfully submitted this 27th day of June 2012.

ROBINSON WATERS & O'DORISIO, P.C.

*s/ Tracy L. Ashmore*_____
Tracy L. Ashmore
Robinson, Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
(303) 297-2750 (f)

Plaintiff's Address:

5406 Old Folsom Road
Rapid City, SD 57703